IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 9, 2013

**IN RE ADOPTION OF ALEXANDER M. S. F. ET AL.**

**Appeal from the Chancery Court for Hickman County**
**No. 2011CV4468      Robbie T. Beal, Judge**

---

**No. M2012-02706-COA-R3-PT - Filed August 27, 2013**

---

The mother and stepfather of two children filed a petition to terminate the parental rights of the children's father on the ground of abandonment. The trial court terminated father's rights on the grounds that he willfully failed to visit the children and paid only token support for the children in the four months preceding the filing of the petition. After a careful review of the record and the applicable law, we reverse the trial court, finding there is not clear and convincing proof that father's lack of visitation was willful. We further hold that father's payment of $697.76 in child support during the relevant time period was not mere "token support."

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and RICHARD H. DINKINS, J., joined.

Richard Boehms, Duck River, Tennessee, for the appellant, Michael Gregory S. F.

Patricia W. Holder, Centerville, Tennessee, for the appellees, Jackie and Lorena J.

**OPINION**

**I. Factual and Procedural History**

The children involved in this case, Daniel L.C. and Alexander M.S.F., were born out of wedlock to Michael G.S.F. ("Father") and Lorena K.A.J. ("Mother") in May 2008 and November 2009, respectively. Mother and Father were in a relationship for approximately three years and lived together for over one year following the birth of their eldest child. Their relationship ended in December 2009.

In January 2010, Mother filed a petition for an order of protection against Father. On

March 15, 2010, the Hickman County General Sessions Court entered an order dismissing Mother's petition and awarding Father visitation with his sons every other Saturday from 8:00 a.m. to 4:00 p.m. On April 14, 2010, the Hickman County Juvenile Court entered an Order setting Father's child support obligation at $120 per week.

Father visited the children every other Saturday in accordance with the March 15 Order for several months, but his visits became less regular in late 2010. Father discontinued visitation with the children in early 2011. In May 2011, Mother married Jackie G.J. ("Stepfather"). On June 15, 2011, Mother and Stepfather filed a Petition to Terminate Parental Rights of [Father] and for Adoption.[1]

The trial court held a hearing on July 26, 2012 at which Stepfather, Mother, and Father testified. The trial court terminated Father's parental rights by order entered November 13, 2012 based on a finding of abandonment pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(i). Father appeals.

## II. Standard of Review

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Pursuant to Tenn. Code Ann. § 36-1-113(l)(1), "[a]n order terminating parental rights shall have the effect of severing forever all legal rights and obligations of the parent or guardian of the child against whom the order of termination is entered and of the child who is the subject of the petition to that parent or guardian."

Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, M2004-00999-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). To support the termination of parental rights, petitioners must prove

---

[1] We note that Mother lacks standing to petition for the termination of Father's parental rights. *Osborn v. Marr*, 127 S.W.3d 737-40 (Tenn. 2004) (holding that a parent does not have standing under Tenn. Code Ann. § 36-1-113(b) to seek termination of the other parent's parental rights). However, she is a necessary party to the petition for adoption by Stepfather. *See* Tenn. Code Ann. § 36-1-115(c) (stating that a spouse of an individual seeking to adopt must sign adoption petition as co-petitioner even if spouse is the biological parent of the child to be adopted). This issue was not raised in the trial court below and it does not affect our analysis because Stepfather, as a prospective adoptive parent, has standing under Tenn. Code Ann. § 36-1-113(b).

both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.*

In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *Id.* at 654; *see In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013). As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *In re Taylor B.W.*, 397 S.W.3d at 112. We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the grounds necessary to terminate parental rights. *Id.*

## III. Analysis

*Abandonment*

Under Tenn. Code Ann. § 36-1-113(g)(1), termination of parental rights may be based upon a parent's abandonment of a child if it is proven that:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i). In the case before us, the trial court terminated

Father's parental rights based upon a finding that he abandoned the children by willfully failing to visit and by paying only token support as defined in Tenn. Code Ann. § 36-1-102(1)(B). Father argues that the trial court erred in finding clear and convincing evidence that he willfully failed to visit and support the children in the four months preceding the filing of the petition.

### A. Willful Failure to Visit

In this case, the petition for termination was filed on June 15, 2011. Thus, the relevant time period we must consider is February 15, 2011 through June 15, 2011. Both Stepfather and Mother[2] testified that Father's visitation ended in February 2011. Father testified that his employment as a truck driver interfered with his ability to visit the children on Saturdays, and that "[t]he last time [he] saw them on the scheduled visitation . . . was around Christmas." The evidence does not preponderate against the trial court's finding that Father did not visit the children between February 15, 2011 and June 15, 2011.

We next consider whether Father's failure to visit the children was willful. The notion of willfulness is at the heart of the statutory definition of abandonment. This Court discussed willfulness in the context of a parent's failure to visit and support as follows:

> In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

*In re Audrey S.*, 182 S.W.3d 838, 863-64 (Tenn. Ct. App. 2005) (internal citations omitted). Moreover, "the willfulness of particular conduct depends upon the actor's intent." *In re S.M.*, 149 S.W.3d 632, 642 (Tenn. Ct. App. 2004). Failure to visit is not excused by the conduct of another person unless the conduct "actually prevents the person with the obligation from performing his or her duty or constitutes a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child." *In re Hope A.A.*, No. E2012-01209-COA-R3-PT, 2013 WL 1933026, at *11 (Tenn. Ct. App.

---

[2] Mother testified that Father did not see the children any time after February 3, 2011, when he forfeited his visitation so she could spend her birthday with the children.

May 10, 2013).

Father asserts that his failure to visit the children was not willful because he did not have Mother's new contact information, did not know where she lived, and was unable to get in touch with her to establish visitation. In addition, Father argues that his employment as a commercial truck driver interfered with his ability to institute legal proceedings to procure additional visitation with his children.

When giving its oral ruling in this case, the trial court acknowledged the difficulty of terminating Father's rights on the facts presented, stating:

> This ultimately comes down to an element of willfulness. This by no means, this by no means is an open-and-shut case. I don't mind putting that on the record. Unlike many types of termination cases where the parent whose rights are to be terminated comes in with a whole host of issues that they've been dealing with, whether it be criminal issues, emotional issues, whatever, that's not what we really have here.
> The father here presents himself. He has not had any criminal trouble. He's had a contempt, but he's not had any real criminal trouble in his life. He seems to be able to be employed. He doesn't appear and none's been brought out that he has any mental health issues or dependency issues that the court needs to be concerned with.
> Quite frankly, he comes across intelligently on the stand. This is not a case where the decision is clear cut with regard to just the nature of the people presenting themselves to the Court.

In its final order, the trial court failed to include factual findings related to its decision to terminate rights on the basis of abandonment by failure to visit.[3] However, a reading of the court's oral ruling shows the court based its decision on Father's failure to be "proactive" or "aggressive" in trying to find his children and "assert his parental rights."

We have carefully reviewed the evidence and find that the evidence does not clearly

---

[3] The November 13, 2012 Final Order of Termination of Parental Rights states the following regarding termination by abandonment by willful failure to visit:

> The Court . . . makes the following FINDINGS OF FACT by clear and convincing evidence and CONCLUSIONS OF LAW:
> 1. The Respondent, [Father] willfully failed to visit the minor children . . . during the four (4) months preceding the time of the filing of the termination petition on June 15, 2011.

and convincingly establish that Father abandoned the children by willfully failing to visit. Father testified that he went to the agreed upon meeting location on at least two occasions in February and that Mother did not arrive with the children. The evidence shows that Mother did nothing to encourage or facilitate visitation between the children and Father, and it is undisputed that Father could not contact the young children directly. Father did not have Mother's new contact information once her cell phone was deactivated. Father testified that his company policy prevented him from making phone calls when he was driving and that, when he tried to look up Mother's phone number, he was unable to call the twenty-seven people that were listed under her last name. Father further testified that he was dissuaded from aggressively seeking contact with Mother because she had previously attempted to take out an order of protection against him. Regarding the previous order of protection, Father testified:

Q: Okay. So after you stopped seeing them, when you were showing up, when you were calling, did the fact that she took out that order of protection the year before have any effect on your efforts to contact her and go get them?
A. Yes, yes, it did.
Q. What effect did it have?
A. I didn't want to end up back in here with an order of protection and no visitations to my kids - -
Q. Okay. Did you - -
A. - - due to me trying to get ahold of her.
Q. Okay. Did you even know where she lived?
A. No.
Q. Okay. When did you find out she had been married?
A. I found out through a friend probably six months ago that she was actually married.
Q. Okay. Did you say anything, or contact her at all about that marriage?
A. When I heard that they got engaged, I asked that if my boys was in the wedding, I would at least get a picture of them in their suits.
Q. Okay. After you stopped seeing them, was there a reason you didn't try to hire an attorney to force her?
A. I couldn't afford it.

Under the circumstances presented, we hold that Stepfather failed to provide proof that eliminated any serious or substantial doubt about whether Father abandoned the children by a willful failure to visit. *In re M.J.B.*, 140 S.W.3d at 653. Thus, we hold that the trial court erred in finding clear and convincing evidence that Father abandoned the children by willfully failing to visit them. Therefore, we reverse the court's order of termination on this basis. We next consider whether Father willfully failed to pay support.

-6-

*B. Willful Failure to Support*

A parent's failure to provide support is willful if that person is "aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In re M.L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005). "Token support payments are not sufficient to preclude a finding of a willful failure to support." *In re Adoption of Angela E.*, 2013 WL 960626, at *4. Token support is defined in Tenn. Code Ann. § 36-1-102(1)(B) as support that "under the circumstances of the individual case, is insignificant given the parent's means."

It is undisputed that Father paid child support during the four-month period preceding the filing of the petition, however the trial court deemed the support paid to be token support as defined by Tenn. Code Ann. § 36-1-102(1)(B).

During the relevant time period, Father paid $1,730.76 in child support. This amount includes $1,033.00 that was taken by tax intercept on March 18, 2011. As an initial matter, we note that interception of a tax refund does not constitute a voluntary payment of child support. *See In re Lavanie L.*, E2008-02622-COA-R3-PT, 2009 WL 3231091, at *6 (Tenn. Ct. App. Oct. 8, 2009). It is, in fact, irrelevant to the issue of willful failure to support. *In re Alyssa Y.*, E2012-02224-COA-R3-PT, 2013 WL 3103592, at *10 (Tenn. Ct. App. June 17, 2013). Thus we must consider whether Father's payment of $697.76 in child support constitutes token support under the circumstances presented.

In ruling that the child support Father paid during the relevant time period was token, the trial court held:

> Regarding the ground of failure to provide support, the Court finds that there has been a significant history of paid child support. However, during the four-month period of time in question, the amount of child support actually paid was about 30 percent of what it was supposed to have been. The Court does not feel inclined to give credit for the $1,000.00 that was done by a tax intercept. The Court finds that it is by virtue of an administrative process of the State of Tennessee to take that money for arrearages. Additionally, the Court takes into evidence that would state that during that time period [Father] was employed and able, his bills were significantly low, that he was able to pay child support. The Respondent failed to do so, paying only a third and the Court finds that by legal standards that is token support. Therefore, the court [finds Father], only paid token child support for the four (4) months preceding the filing of the termination petition on June 15, 2011, amounting to willful failure to provide support.

Father testified that he was working as a truck driver earning between $600 and $700 per week during the four-month time period immediately preceding the filing of the petition. There was very little evidence concerning father's expenses during the relevant time period other than the following:

> Q: And during that time, you wouldn't have paid rent, because you still technically lived with your dad; is that right?
> A. I would help with whatever bills or anything they had.
> Q. How much money would you devote to that?
> A. It varied. I paid taxes there this year, which was like 200 bucks. It's what they needed help with.
> Q. You didn't have a car payment during that time, did you?
> A. At that time, yes, actually, I did.
> Q. Okay. What was it?
> A. It was 2-something a month, and I had insurance that was $100 a month.

A "Child Support Payment Summary" was entered as an exhibit at trial and reflected the following payments from February 15, 2011 through June 15, 2011:

| | |
|---|---|
| 3/18/2011 | $1,033.00 (tax intercept) |
| 5/20/2011 | $166.14 |
| 5/27/2011 | $169.92 |
| 6/7/2011 | $180.00 |
| 6/10/2011 | $180.00 |

The summary also shows that prior to the four-month period in question, from January 6 through February 10,[4] Father paid $503.11[5] in child support. When asked why his support payments were discontinued from mid-February to mid-May, Father stated, "I don't know. When I was working at Warner, it should have been pulled out of my paycheck."

---

[4] In addition to the payments Father made prior to the relevant time period, the summary shows that Father continued to pay support from June 17, 2011 through the end of 2011 in the amount of $1,674.75.

[5] According to the Child Support Payment Summary, Father made payments as follows:

| | |
|---|---|
| 1/06/2011 | $120.00 |
| 1/20/2011 | $120.00 |
| 1/27/2011 | $120.00 |
| 2/03/2011 | $120.00 |
| 2/10/2011 | $23.11 |

Our Supreme Court's recent opinion in *In re Adoption of Angela E.*, No. W2011-01588-SC-R11-PT, 2013 WL 960626 (Tenn. Mar. 13, 2013) provides some guidance for this scenario. The father in *In re Adoption of Angela E.* paid $3500 of the $10,336 he owed in child support during the relevant time period. *Id.* at *4. The amount was roughly thirty-four percent of what he owed. The Court considered the "limited" evidence concerning his earnings and expenses and concluded that his payment of $3500 during the four months immediately preceding the filing of the petition was more than mere "token support" and precluded a finding of abandonment. *Id.* at *4-5. Likewise, the Father in this case paid approximately one-third of what he owed in child support during the relevant time period. We have considered the evidence related to his earnings and expenses and find the evidence does not clearly and convincingly establish that father's payment history during the relevant time period constituted abandonment by willful failure to support. Specifically, we find that his payments were not insignificant given his means and did not amount to mere token support.

Having found the evidence does not clearly and convincingly support a finding of abandonment by willful failure to visit or support, we do not go forward with the best interest analysis. Accordingly, we reverse the trial court's order of termination.

## III. Conclusion

For the reasons discussed above, we reverse the trial court's termination of Father's parental rights. The trial court should act promptly to reinstate Father's parenting time with the children. Costs of the appeal are taxed against appellees.

_____
ANDY D. BENNETT, JUDGE